UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

UNITED STATES OF AMERICA,

    -against-                                                  16 CR 521 (CM)

DWAINE COLLYMORE,

    Defendant.

------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/5/17
```

## DECISION ON PRETRIAL *IN LIMINE* MOTIONS

McMahon, C.J.:

Dwaine Collymore is charged with Hobbs Act robbery and firearms offenses in connection with an April 28, 2016 attempted robbery of a marijuana-selling operation in the Bronx. The Government says that the evidence at trial will show that the defendant murdered one of the robbery victims, Carlos Vargas, by shooting him in the face.

Trial is to commence January 16, 2018.

Pending before the Court is a motion *in limine* filed by the Government, asking the Court to make pretrial rulings on the admissibility of certain evidence, specifically: (1) evidence about internet searches by the defendant—conducted several months before the murder—for the murder weapon, which is a unique type of revolver handgun commonly called "The Judge," capable of firing shotgun shells; and, (2) photographs of revolvers—taken before and after the murder—stored on defendant's cellphone.

Applicable Law

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any

1

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Federal Rule of Evidence 402, in turn, provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed. R. Evid. 402.

Federal Rule of Evidence 403 states, in relevant part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States* v. *Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of other acts may, however, be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Second Circuit "follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that

is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Moran- Toala*, 726 F.3d 334, 345 (2d Cir. 2013) (quoting *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011)). "Other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes is not unfairly prejudicial. *United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000). "[E]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *See United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) (internal citation omitted)).

<u>The Internet Searches</u>

The Government says that it has evidence that defendant—approximately three months prior to the Vargas murder—was engaging in extensive research about the revolver ("The Judge") used to kill Vargas. The Government asks that it be allowed to introduce this evidence on the ground that it links defendant to the murder weapon. Defendant does not address this aspect of the Government's application in his responsive papers, so I deem the motion unopposed.

It is granted.

The fact that the Defendant searched the internet to learn about "the Judge" does indeed connect him to the weapon that was actually used in this case. While the internet searches do not prove that the defendant actually acquired "The Judge," they demonstrates defendant's interest in and familiarity with the unique type of revolver used in the murder. *See United States v. Bumagin*, 136 F. Supp. 3d 361, 370 (E.D.N.Y. 2015); *see also United States v. Robinson*, 560 F.2d 507, 513 (2d Cir. 1977) (holding that evidence of subsequent possession of a firearm (a .38 caliber revolver) was admissible as "it tended to show [that defendant] had the 'opportunity' to

3

commit the [earlier crime], since he had access to an instrument similar (also a .38 caliber revolver) to that used to commit it").

Accordingly, the Government will be permitted to introduce this evidence at trial.

The Photographs

The Government also seeks to offer five photographs from defendant's cellphone. The Government contends that these photographs depict defendant holding "a revolver." The first photograph, dated April 29, 2016 (one day after the murder), depicts an individual staring into the camera while pointing a revolver. (Gov. Mem. at 10). Four additional photographs, dated March 27, 2016 (a month prior to the murder), depict what appears to be a male hand holding a loaded revolver; in three of the photographs, the bullets in the revolver are displayed. No one's face is visible in these photographs. (Gov. Mem. at 11).

The Government argues that the photographs are relevant and should be admitted because they demonstrate the defendant's knowledge and familiarity with (and apparent preference for) revolver firearms, as well as his ability to obtain such firearms. The Government says that the photographs also show that defendant's internet searches regarding "The Judge" was not simply the product of idle curiosity by a person who had no intent to purchase or use "The Judge," but rather reflects the actions of a man who acquired and possessed firearms.

Defendant opposes the admission of the photographs, on the ground that their probative value is substantially outweighed by the danger of unfair prejudice, and because he believes they represent improper propensity evidence, inadmissible under the Federal Rules of Evidence 403 and 404(b). It is the defendant's position that the photographs lack relevance because (1) it is not clear that defendant is the person depicted in the photographs; and (2) the revolver in in the photographs is not "the Judge" – a unique type of revolver, in that it is the only

revolver that shoots shotgun shells – but is, rather, an entirely different type of revolver. He argues that the photographs are highly inflammatory, may excite the emotions of jurors, and may lead them to punish the defendant for his mere possession of a gun, or conclude that because the defendant possessed a gun in the photographs, he must be guilty of the charged crime.

I decline to admit the four photographs of a man's hand holding a revolver that even the Government concedes is not "The Judge," but rather a more traditional revolver. (Gov't Br. at 10). The hands in those photos could be anyone's. One cannot conclude that the hands are Mr. Collymore's from the fact that the pictures are on his cellphone; not everyone's cellphone memory is comprised exclusively of selfies. The probative value of these four photographs is *de minimis*, and their potential to inflame the jury, or to cause the trier of fact to conclude that defendant has a propensity to use guns is great. *See* Fed. R. Evid. 404(b), 403.

The fifth photograph is depicted in the footnote at the bottom of this page, along with known exemplars of defendant's face (his mug shot, which was used during a lineup, and the photo taken of defendant by Pretrial Services prior to his arraignment in Federal Court).[1] This

---

1



photograph may or may not be a "selfie;" the individual's left hand cannot be seen, but his left arm appears to be extended in the matter one would extend an arm to take a selfie. For that matter, the person may or may not be the defendant; the hood and sunglasses make a firm identification difficult, but the man in the photograph has features that are consistent with – or at least not inconsistent with – facial features in the known exemplars.

If the photograph had sufficient probative value, those matters would be for the jury. *Huddleston v. United States*, 485 U.S. 681, 689-690 (1988); *see also United States v. Bangoura*, 507 F. App'x 93, 94 (2d Cir. 2013) (describing Huddleston as "explaining that Rule 404(b) evidence is admissible if the jury could reasonably conclude that it had occurred by a preponderance of the evidence") (internal quotation marks omitted). So the question comes down to whether the gun can be linked with the murder weapon, "The Judge," one version of which is depicted in the next footnote.

The Government candidly admits, in its Reply Brief, that it cannot firmly identify the gun in the photograph as "The Judge." All it can say is that the gun "might be" the murder weapon because it is a revolver, like "The Judge," and so is "similar" to "The Judge" to make it admissible. For this proposition, it cites *Robinson*, a case in which the principal issue at trial was the identification of the bank robbers. Robinson had a .38 caliber revolver in his possession when he was arrested. The trial evidenced showed that four guns had been assembled by the four robbers for use in the robbery (a shotgun, a .32 caliber gun, a .38 caliber gun, and a gun that "looked like" a .38 caliber), and that during the robbery Robber A carried the shotgun while Robber B held the .32 caliber gun. By process of elimination, if Robinson was one of the other two robbers, he had to have possessed either the .38 caliber or the gun that "looked like" a .38 caliber. On those facts, the Second Circuit held that evidence of the defendant's subsequent

6

possession of a .38 caliber revolver was admissible, as "it tended to show Robinson had the 'opportunity' to commit the robbery, since he had access to an instrument *similar to* that used to commit it.'" *Robinson*, 560 F.2d at 513. The key was the similarity between the gun in his possession at the time of arrest and the gun he was said to have possessed during the charged robbery. On the Government's evidence, Robinson either possessed a .38 or a gun that looked very much like it; Robinson's subsequent possession of a .38 tended to show that he could have been carrying a .38 caliber revolver during the robbery. It was not the fact that the gun he possessed was a revolver, but the fact that it was *a .38 caliber revolver* – a gun that, according to the evidence, was used during the commission of the crime – that made evidence about Robinson's subsequent possession of it admissible.

The Government—relying on other cases in which the Second Circuit has upheld admission of evidence about a defendant's prior or subsequent possession of a weapon other than the one used to commit the crime[2]--insists that it is enough that the gun in the photograph and the gun used in the murder were both "revolvers." I disagree. I do not know enough about the facts of those cases to say whether this court would have admitted the contested evidence. But I do know that there are revolvers and revolvers. There are snub nosed revolvers and long barreled revolvers. Some revolvers are colored gun-metal blue, others stainless steel. There are revolvers with raised sights and revolvers with silencers. The significance of *Robinson*, it seems to me, is that the two guns were the same type of revolver. So the mere fact that both "The Judge" and the gun in the photograph are revolvers would not convince this court to admit the photograph, given its highly inflammatory nature.

---

[2] *See id.* at 512-13 (collecting cases); *see also United States v. Slaughter*, 248 F. App'x 210, 212 (2d Cir. 2007) (court properly admitted two prior instances on which the defendant possessed "semiautomatic handgun[s]" other than the semiautomatic handgun used in the charged crime).

7

However, in this case there are visible similarities between the weapon in the photograph and "The Judge" (one model of which is depicted below). (Gov. Mem. at 6) (Photo of a "Judge" revolver taken from a snapshot of an on-line search by defendant).[3] Both are revolvers. Both have a sight mounted on the barrel. The barrel of the gun in the photograph appears to be dark metal and considerably longer than the very snub-nosed barrel of "The Judge" in the picture below; however, the text accompanying the picture indicates that "The Judge" is available with barrels as long as six inches, in both blue and stainless steel. The gun in the photograph thus appears to be sufficiently "similar" to the alleged murder weapon so that the Government could plausibly argue that it was the murder weapon. It is, therefore, admissible. The jury could "reasonably find . . . by a preponderance of the evidence" that defendant was the person depicted in the photograph holding a revolver like the murder weapon, *see Huddleston v. United States*, 485 U.S. at 689-690, and appropriately consider that evidence, along with all the other evidence

---

Here Come da Judge: Taurus .45 Colt/.410 Bore Revolvers

By Chuck Hawks



Taurus Judge revolver illustration courtesy of Taurus International

I have been asked to do a full review of Taurus .45/.410 revolvers for Guns and Shooting Online, but declined. I simply refuse to waste that much of my time and effort on a product that I already know is inherently incapable of delivering acceptable results. However, in response to popular demand I agreed to do this abbreviated article.

At present, Taurus is offering six models of .45 Colt/.410 bore shotshell combination revolvers, if you count different finishes (blue or stainless) as separate models as Taurus does. Note that these are not "convertible" revolvers supplied with two cylinders; these Taurus revolvers fire both .45 Colt cartridges and .410 shotshells from the same cylinder. The variations include "Tracker" models with 6" barrels in blue and stainless steel, similar models with 3" barrels in blue or stainless steel and an "ultra-light" version (at 22 ounces empty, not really) with a 3" barrel built on an aluminum alloy frame. These five models are all chambered for 2-1/2", .410 shotshells.

[3] The sixth model, named the "Judge," seems to have generated the most interest. It is a

in the case, when deciding whether the Government has proved beyond a reasonable doubt that defendant had committed the charged crimes.

The probative value of the firearm photograph having been established as significant, its evidentiary value is not substantially outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403—at least as that balancing is done in this Circuit—since the photograph is less inflammatory and sensational than the charged conduct (attempted robbery and murder), by an order of magnitude. *United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). The Court can cure any risk that the jury may draw an impermissible character or propensity inference through an appropriate limiting instruction. *See, e.g., United States v. Cadet*, 664 F.3d 27, 33 (2011).

Nothing in this decision precludes the Government from offering the other four photographs in rebuttal if evidence introduced by the defense warrants it.

This constitutes the decision and order of the Court.

December 4, 2017

Colleen McMahon
Chief Judge

BY HAND AND ECF TO ALL COUNSEL

9