UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

            v.                              16 Cr. 521 (CM)

DWAINE COLLYMORE,
                                            Plea

                  Defendant.

------------------------------x

                                            New York, N.Y.
                                            February 15, 2018
                                            10:16 a.m.


Before:

                    HON. DEBRA C. FREEMAN,

                                            Magistrate Judge

                        APPEARANCES

GEOFFREY S. BERMAN
     Interim United States Attorney for the
     Southern District of New York
JARED LENOW
HAGAN C. SCOTTEN
     Assistant United States Attorney

DAVID STERN
     Attorney for Defendant

ALSO PRESENT:  NATALI TODD
               KELLY ZOVICKIAN, Paralegal, USAO

1    (Case called)

2         MR. LENOW:  Good morning, your Honor.

3         Jared Lenow for the government.  With me at counsel

4    table is Kelly Zovickian, a paralegal with our office.

5         THE COURT:  Good morning.

6         MR. STERN:  Good morning.

7         David Stern for Mr. Collymore.

8         THE COURT:  Good morning.

9         First, I want to understand exactly what I have in

10   front of me.  I have a third superseding indictment.  Was

11   Mr. Collymore presented on each of the charges in the

12   superseding indictment?

13        MR. LENOW:  Judge, he just needs to be arraigned on

14   the indictment.  He's been presented before on charges related

15   to the incident and bail conditions were set.

16        THE COURT:  I'm sorry.

17        MR. STERN:  Mr. Collymore has been presented in this

18   case already.  He just needs to be arraigned on the new charges

19   in this indictment.  This is the third indictment in this case.

20        THE COURT:  Has he been presented on those new

21   charges?  Was he advised of those charges by a judge?

22        MR. LENOW:  No, your Honor.  Maybe it's a nomenclature

23   issue, but --

24        THE COURT:  He was originally brought in and advised

25   of his rights.  A determination was made as to whether counsel

 1    should be appointed.

 2              MR. LENOW:  Yes, your Honor.

 3              THE COURT:  Was he advised by a judge of the charges

 4    and of his rights with respect to those charges?

 5              MR. LENOW:  No, he needs to be arraigned, your Honor.

 6    That's correct.  What your Honor just went through is the

 7    process we need to go through this morning, the arraignment

 8    process.

 9              THE COURT:  What charges are new?

10              MR. LENOW:  Your Honor, each of these counts has been

11    brought before in another -- there has been a slight

12    modification of the wording in these counts.  Each count has

13    been brought before.  Out of abundance of caution, we think it

14    would be advisable for the Court to arraign him on each of the

15    charges in the S3 indictment.

16              THE COURT:  I'm very confused.  I hate to clutter up

17    the record with this, but when you say he's been presented on

18    each of the charges, but because there was some wording changes

19    on each of them?

20              MR. LENOW:  Your Honor, my explanation was definitely

21    muddled.  If I can just clarify.

22              What we're asking is that -- this is a brand-new

23    charging instrument.  We would appreciate if the Court -- we

24    think it's necessary for the Court to arraign Mr. Collymore on

25    this charging document, including each of the charges within

1    it.  Perhaps we're just using a different phrasing.

2                THE COURT:  I'm just going to do the whole thing,

3    because it never hurts to do more.

4                MR. LENOW:  Fair enough, Judge.

5                THE COURT:  I'm sufficiently confused.  In excess of

6    caution, I'm just going to make sure Mr. Collymore understands

7    his rights and understands each of these charges.

8                MR. LENOW:  Thank you, Judge.

9                THE COURT:  Counsel, are you retained counsel or

10   appointed counsel?

11               MR. STERN:  Appointed.

12               THE COURT:  CJA?

13               MR. STERN:  Yes.

14               THE COURT:  Mr. Collymore, the first thing I want to

15   do is advise you of your rights.

16               You have the right to remain silent.  You're not

17   required to make any statements.  Even if you have already made

18   statements to the authorities, you need not make any further

19   statements.  Anything you do say can be used against you.

20               You do have the right to be represented by counsel

21   during all court proceedings, including this one, also any

22   questioning by the authorities.  I understand you already have

23   court-appointed counsel representing you here today.

24               The charges that you are facing in this third

25   superseding indictment are, in the first count, a violation of

1    Title 18 of the United States Code, Section 1951, which makes

2    it a crime to conspire with others to commit robbery, as that

3    term is defined under federal law.  More specifically, it's

4    charged that you agreed with others to rob individuals who were

5    engaged in the sale of marijuana at a location in the Bronx on

6    or about April 28, 2016.

7         The second count charges you with a violation of Title

8    18 of the United States Code, Section 1951 and 2.  More

9    specifically, it's charged that you committed robbery that

10   relates to the same events as Count One, Count One being the

11   conspiracy charge.

12        In Count Three, it's charged that you had violated

13   Title 18 of the United States Code, Sections 924(c)(1)(A)(i),

14   (ii), (iii), and 2, which makes it a crime for a person to use

15   and carry a firearm during and in relation to a crime of

16   violence, specifically, attempted robbery, as charged in Count

17   Two -- I should have said Count Two was an attempted robbery --

18   in furtherance of that crime, to possess a firearm or aid and

19   abet the use, carrying, and possession of a firearm which was

20   brandished and discharged.

21        Count Four charges a violation of Title 18 of United

22   States Code, Sections 924(j)(1) and (2), which makes it a crime

23   for a person during and in relation to a crime of violence --

24   again, the attempted robbery charged in Count Two of the

25   indictment -- to use and carry a firearm and, in furtherance of

1    that crime, possess a firearm and aid and abet the use,

2    carrying, and possession of a firearm and, in the course of

3    that crime, to cause the death of a person through the use of a

4    firearm.

5            Counsel, I assume you've received a copy of the third

6    superseding indictment?

7            MR. STERN:  I have, yes.

8            THE COURT:  Have you had a chance to read and review

9    it with your client?

10           MR. STERN:  We have discussed it, yes.  It's almost

11   identical to the prior indictments.

12           THE COURT:  Do you waive its public reading?

13           MR. STERN:  We do.

14           THE COURT:  Mr. Collymore, how do you wish to plead to

15   these four counts of the third superseding indictment?

16           THE DEFENDANT:   Not guilty.

17           THE COURT:  I also understand that the reason you are

18   here today before me is primarily to proceed, instead, with a

19   plea of guilty on these charges; is that correct, counsel?

20           MR. STERN:  Yes, it is.

21           THE COURT:  I understand this matter has been referred

22   by Judge McMahon for purposes of a plea.

23           Before I start with the plea, is there anything else

24   that either counsel believes I should be going over with

25   Mr. Collymore?

 1                MR. LENOW:  No, your Honor.  Thank you.

 2                MR. STERN:  No.

 3                THE COURT:  Mr. Collymore, this indictment that I just

 4      referred to, the third superseding indictment, charges you with

 5      felony crimes.

 6                You have a right to a trial on the charges before a

 7      United States District Judge.  If you are found guilty, you

 8      will be sentenced by a United States District Judge.

 9      Ordinarily, a defendant who wishes to enter a plea of guilty to

10      these types of charges would do that before the district judge

11      as well.  That judge would then conduct the so-called plea

12      allocution, which is the question-and-answer session which must

13      accompany the entry of such a plea.

14                With a defendant's consent, however, a United States

15      magistrate judge, such as myself, also has the authority to

16      take a plea.  If you were to consent to proceed before a

17      magistrate for the purpose of entering the plea, you would

18      receive all of the same procedural protections as you would

19      receive if you were proceeding before the district judge.

20                Do you understand that?

21                THE DEFENDANT:  Yes.

22                THE COURT:  Is it your wish to consent to proceed

23      before a magistrate judge for the purpose of entering a plea?

24                THE DEFENDANT:  Yes, your Honor.

25                THE COURT:  I have a consent form that's been handed

1     up.  It's entitled Consent to Proceed Before a United States

2     Magistrate Judge on a Felony Plea Allocution.

3              Did you sign this form?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Before you signed it, did your lawyer

6     explain it to you?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Have any threats or promises of any kind

9     been made to cause you to agree to this procedure today?

10             THE DEFENDANT:  No.

11             THE COURT:  I will accept the consent.

12             In order to take your plea, I must ask you some

13    questions for which I need to place you under oath.

14             Would you please raise your right hand.

15             (Defendant sworn)

16             THE COURT:  Please state your full name for the

17    record.

18             THE DEFENDANT:  Full name is Dwaine Collymore.

19             THE COURT:  Are you a United States citizen?

20             THE DEFENDANT:  No.

21             THE COURT:  Of what country are you a citizen?

22             THE DEFENDANT:  Trinidad and Tobago.

23             THE COURT:  May I ask the government if consular

24    notification was made?

25             MR. LENOW:  Your Honor, I believe it would have been

made at the time of arrest.  I will ensure that within today we
will confirm that.  I can assure the Court either it has been
made or we will ensure it will be made today.  We will, again,
contact the consulate to inform them of today's events.

THE COURT:  It is a mandatory consular notification of
the country.

Just so you understand, Mr. Collymore, as a citizen
of Trinidad and Tobago, you're entitled to have representatives
of your country's consulate who are present in this country
notified of the fact that you've been arrested and detained and
there are charges against you.  It is a country where that
notification has been made automatically.

I'm going to assume that notification was made at the
time of your arrest, but I'm asking the government to follow up
on it.  If you wish to hear from someone from the consulate of
Trinidad and Tobago and you do not, let your attorney know and
I'll ask counsel from the government to follow up on that.

How old are you?

THE DEFENDANT:  33 years old.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Ninth grade.

THE COURT:  Did you leave after ninth grade because
you were having any difficulties in school with learning or
anything, or were there other reasons?

THE DEFENDANT:  I always had anxiety, so I had a hard

 1    time focusing.

 2              THE COURT:  You had a hard time focusing because of

 3    anxiety?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  Are you able to focus on these proceedings

 6    today in order to understand them fully?

 7              THE DEFENDANT:  Like, my problem with focusing is,

 8    like, when it comes to, like, reading and stuff, everything's

 9    just all over the place, and I can't pay attention to what's on

10    the paper.  So I always just run away, like, that's always been

11    my problem.

12              MR. STERN:  Judge, I think what we're going to do,

13    with your permission, is I'm going to say the words to him and

14    he'll say them, but he's read this with me and agrees these

15    things are true.

16              THE COURT:  We're not anywhere up to his stating what

17    he did that makes him guilty of a crime.  When we get to that

18    point, we'll make accommodations, if necessary.

19              MR. STERN:  Thank you.

20              THE COURT:  Starting with the Consent Form to Proceed

21    Before a Magistrate Judge, which you said you've gone over with

22    your counsel, that's a relatively short form, but did you have

23    any difficulty reading or understanding that form?

24              THE DEFENDANT:  No.

25              THE COURT:  Have you recently been under the care of a

1    doctor for any reason?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  How about a psychiatrist or a

4    psychologist?

5              THE DEFENDANT:  I spoke to this one, but briefly.

6              THE COURT:  Same sort of issues that you already

7    described, anxiety, or is there anything else that I should

8    know about?  Again, I'm looking for things that might affect

9    your ability to participate fully today.

10             THE DEFENDANT:  It's related to anxiety.

11             THE COURT:  Do you take any medication?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Did you take your medication as necessary

14   before today?

15             THE DEFENDANT:  Last --

16             THE COURT:  If you needed it.

17             THE DEFENDANT:  Last night I took.  I'm supposed to

18   take them at night before bed.

19             THE COURT:  You took it last night?

20             THE DEFENDANT:  Correct.

21             THE COURT:  Again, the reason I'm asking these

22   questions is to make sure that you are able to participate

23   fully in these proceedings today, that you understand what's

24   going on, that you're able to participate voluntarily, with

25   comprehension.  If there's any problem, you'll let me know?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Do you have any condition that affects

3    your ability to see or to hear?

4           THE DEFENDANT:  I'm deaf in my right ear.

5           THE COURT:  Can you hear me OK?

6           THE DEFENDANT:   Yes.

7           THE COURT:  Do you have any condition that affects

8    your ability to think or to reason or to understand or to make

9    decisions or judgments on your own behalf?

10          THE DEFENDANT:  Well, with the anxiety it affects my

11   sometimes thinking.  You know, in pressure moments it's really

12   off, and I need to concentrate and focus on what's going on.  I

13   tend to -- it's like adrenaline.

14          THE COURT:  How are you doing with that right now?

15          THE DEFENDANT:  Right now I'm OK.

16          THE COURT:  Again, if you start to have any problems,

17   you have to let me know.

18          THE DEFENDANT:  OK.

19          THE COURT:  Because I have to make sure by the end of

20   this proceeding that you are able to function and think and

21   understand throughout the proceeding.

22          THE DEFENDANT:  OK.

23          THE COURT:  If you're not, you have to say something

24   to your lawyer or say something to me.

25          THE DEFENDANT:  OK.

 1           THE COURT:  Have you ever been treated for drug

 2   addiction or alcoholism?

 3           THE DEFENDANT:  No.

 4           THE COURT:  As you appear before me, are you under the

 5   influence of any kind of drugs or alcohol or medication?

 6           THE DEFENDANT:  No.

 7           THE COURT:  Is your mind clear?

 8           THE DEFENDANT:  Yes.

 9           THE COURT:  Do you generally feel all right today?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you have any trouble understanding the

12   questions I'm asking you?

13           THE DEFENDANT:  No.

14           THE COURT:  Have you received a copy of the third

15   superseding indictment in this case?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Have you had a chance to read it or do you

18   want me to take the time to read it to you?

19           THE DEFENDANT:  No, you don't have to.

20           THE COURT:  I'm sorry?

21           THE DEFENDANT:  You do not have to read it.

22           THE COURT:  I do not have to read it.

23           With respect to that document and going through it,

24   did you have any difficulties focusing or understanding what

25   was in the indictment?

 1          THE DEFENDANT:  Along with my lawyer we went through

 2     it, so I understand.

 3          THE COURT:  OK.  You understand what it says you did?

 4          THE DEFENDANT:  Yes, your Honor.

 5          THE COURT:  Have you had enough time to talk to your

 6     attorney about the charges and about how you wish to plead?

 7          THE DEFENDANT:  Yes.

 8          THE COURT:  Are you satisfied with the representation

 9     and advice given to you by your attorney?  If you have any

10     hesitation, you have to tell me.

11          THE DEFENDANT:  Well, I thought I could get something

12     better than that, but I was told there's no way, so I guess my

13     back's against the wall.

14          THE COURT:  Do you feel comfortable enough with the

15     advice that you've received that you feel prepared to go

16     forward today, or do you feel that you are not confident

17     regarding the advice and representation you've received and

18     perhaps you should not go forward today?

19          You have to be honest with me.

20          THE DEFENDANT:  I really wanted more time, but I was

21     told that today I go to trial on Tuesday.

22          THE COURT:  Is this case scheduled for trial on

23     Tuesday?

24          MR. LENOW:  Yes, your Honor.  The case is scheduled to

25     commence first thing in the morning on Tuesday before Judge

1   McMahon.

2          To follow up on the colloquy that your Honor just had,

3   we've had a conversation with defense counsel.  The government

4   has not extended a plea offer.  We will not be extending a plea

5   offer.  There will be no other offer, no offer made.

6          Here, the defendant is pleading to the indictment

7   pursuant to a Pimentel letter, and there will be no plea offer

8   forthcoming.  As Mr. Collymore did state, this is the situation

9   he finds himself in or he will proceed to trial on Tuesday, and

10  no formal plea offer has been made and none will be made.

11         THE COURT:  I don't want you to come back later,

12  Mr. Collymore, and say that your lawyer did not fully inform

13  you of your options; that he was in some manner not giving you

14  fair, meaningful, effective representation.  I want you to feel

15  confident with the representation you've received as you go

16  forward with the plea.

17         If you're not confident, I will try to find someone

18  else to at least consult with you today.  I'm not saying that

19  I'm going to substitute somebody else as a different lawyer,

20  but I will let you consult with someone else to make sure

21  you've had a full opportunity to feel confident in the path

22  that you're saying.  But if you're going to trial on Tuesday,

23  you're going to trial on Tuesday.  I can't control Judge

24  McMahon's schedule.  Your lawyer can ask to have it put off.

25  She may say yes, she may say no.

1    Are there other defendants in the case that would go

2    to trial?

3    MR. LENOW:  It's just Mr. Collymore.

4    Judge McMahon's chambers has informed us there will

5    not be a change in the trial date; that it will be going

6    forward on Tuesday.

7    THE COURT:  Was there a request for the change?

8    MR. LENOW:  There have been two prior adjournments.

9    This will be the third trial date we've had.  Judge McMahon's

10   chambers has informed us that it's a firm trial date and will

11   be commencing trial on Tuesday.

12   THE COURT:  It sounds like the case is going to go to

13   trial on Tuesday, unless you decide to plead.  As I've

14   explained to you, you have every right to go to trial if you

15   wish.  You do not have to plead.  I'll go through with you what

16   rights you would have at trial and what the circumstances of a

17   plea would be and so on.  That's part of what I'm here to do

18   today, but it doesn't sound like there will be more time to

19   consider it.

20   The most I can do is see if I can find another

21   attorney to consult with you for a short time and, if you

22   decide you still want to plead, put you back on my calendar

23   today a little bit later.  My calendar is pretty full, but I

24   will do my best to accommodate you, if that's what you want.  I

25   just want to make sure you're comfortable going forward today

1    with this plea.

2              What do you want to do?

3              THE DEFENDANT:  I would like the opportunity to talk

4    to someone else.

5              THE COURT:  We are going to check and see who the CJA

6    attorney is who is on duty today.  I don't know if there's a

7    conflict.  Is there likely to be a conflict with anyone?

8              MR. LENOW:  Your Honor, I'm happy to consult with the

9    clerk's office and make sure there's a conflict-free counsel

10   that is available.

11             THE COURT:  I understand the CJA on duty today is

12   running late due to health issues, so everything may get thrown

13   into some turmoil.

14             You should also know that I have pleas scheduled in

15   this courtroom this morning.  This was supposed to be 10:00.  I

16   have 10:30, 11:00, 11:30, and a 2:30 arraignment, followed by a

17   bail hearing.  So it will be tight, but I'll accommodate you.

18   We'll figure it out.

19             I'm going to ask counsel, if you need to make

20   yourselves available, do you have other commitments in the

21   court later today?

22             MR. LENOW:  I do, Judge, but I'm sure we'll be able to

23   accommodate the Court's preferred schedule.  We'll find a way

24   to make it happen.

25             THE COURT:  Just a moment.  Let's go off the record so

1   that the government can check with respect to CJA roster and

2   see who's conflict-free.  We'll reconvene after we figure that

3   piece out.

4          Off the record.

5          (Recess)

6          MR. LENOW:  Your Honor, Jared Lenow and Hagan Scotten

7   with the government.

8          With me at counsel table is Kelly Zovickian, a

9   paralegal at our office.

10          MR. STERN:  David Stern for Mr. Collymore.

11          THE COURT:  We broke earlier at -- what time was that,

12   counsel?

13          MR. LENOW:  Around 10:30, I think, Judge.  10:30,

14   10:45.

15          THE COURT:  Approximately 10:30 or thereabouts.  It's

16   now quarter to one.

17          In the interim, Natali Todd, who is also on the CJA

18   panel, was good enough to speak with Mr. Collymore and give him

19   some independent counsel.

20          I gather you're all back again.  Ms. Todd is here.

21          MS. TODD:  Good afternoon, your Honor.  Natali Todd.

22          THE COURT:  I gather Mr. Collymore is prepared to go

23   forward with the plea; is that right?

24          MS. TODD:  That's correct, your Honor.

25          I had a conversation with Mr. Collymore, I think, by

1   my watch, maybe 40, 45 minutes, to discuss his intention to

2   plead or not plead guilty, and whether or not he had any issues

3   with his lawyer and conflict, was he not satisfied, was he

4   confused about the plea.

5        Mr. Collymore assured me, after I had gone through

6   potential conflicts with him, what that would look like, and he

7   assured me that he was quite happy with Mr. Stern; that he did

8   wish to proceed with the plea today; and he understood what the

9   guideline calculations were, what the possible maximum

10  sentences and minimum sentences were.  I explained how that

11  might play out at sentencing and all the relevant factors, any

12  medical issues, if that applies, his personal history and

13  characteristics, as 3553(a) dictates, and that all that would

14  be relevant at sentencing.

15       I believe he understood.  He tells me that he's

16  prepared to go forward and he's satisfied with his counsel, but

17  the Court should inquire of him directly, just to be clear.

18       THE COURT:  Mr. Collymore, I'm hoping that was helpful

19  to you in having a chance to speak with Ms. Todd?

20       THE DEFENDANT:  Yes, it was.

21       THE COURT:  After hearing from her, are you now

22  satisfied with the representation and advice that you've

23  received from Mr. Stern?

24       THE DEFENDANT:  Yes, your Honor.

25       THE COURT:  Are you prepared to go forward with your

plea without questions about the adequacy of your counsel?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Todd, I'm going to thank you for your assistance in this case.  I know you have to be somewhere, so I'll let you go where you need to go.

MS. TODD:  Thank you, your Honor.

THE COURT:  Mr. Collymore, are you ready to enter a plea?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  There are four counts, as you know, of the third superseding indictment.  I'm going to go through them one at a time and I'm going to ask with respect to each how you wish to plead, guilty or not guilty.

Count One, as I noted earlier, charges you with participating in a conspiracy to commit robbery under the law that's known as the Hobbs Act, federal law, on or about April 28, 2016, in violation of Title 18 of the United States Code, Section 1951.

How do you wish to plead to that count, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Count Two charges you with attempted robbery on that same date in violation, again, of Title 18 of United States Code, Section 1951.

How do you wish to plead to that count?

1            THE DEFENDANT:  Guilty.

2            THE COURT:  Count Three charges you with using,

3     brandishing, and discharging a firearm during and in relation

4     to a crime of violence, specifically the attempted robbery

5     that's charged in Count Two.

6            How do you wish to plead to that charge?

7            THE DEFENDANT:  Guilty.

8            THE COURT:  Finally, Count Four charges you with using

9     a firearm during and in relation to a crime of violence, again,

10    in the attempted robbery charged in Count Two, and thereby

11    causing the death of a person, which killing constitutes

12    murder, in violation of Title 18, United States Code, Sections

13    924(j)(1) and (2).

14           How do you wish to plead to that charge?

15           THE DEFENDANT:  Guilty.

16           THE COURT:  I neglected to say Count Three was in

17    violation of Title 18 of U.S. Code, Sections 924(c)(1)(a)(i),

18    (ii), (iii), and 2.

19           Do you understand that?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Because you are proposing to enter a

22    guilty plea to each of these charges, I have to ask you some

23    additional questions to be sure that you understand the nature

24    of the charges against you and the consequences of your plea

25    and also to ensure that your plea is voluntary.

1          First, I want you to understand that if you are

2     convicted of the charge in Count One, that's the robbery

3     conspiracy charge, you can face, on that count alone, a maximum

4     sentence of 20 years' imprisonment, a maximum term of

5     supervised release of three years, a maximum fine of the

6     greatest of $250,000, or twice the gross pecuniary gain or

7     monetary gain that you derived from the offense, or twice the

8     gross pecuniary loss to persons other than yourself resulting

9     from the offense, as well as a mandatory special assessment of

10    $100.

11         Do you understand all of that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Do you understand if convicted on the

14    second count, that's the attempted robbery charge, standing

15    alone, you can face on that count a maximum sentence of 20

16    years' imprisonment; a maximum term of supervised release of

17    three years; a maximum fine of, again, the greatest of

18    $250,000, or twice the gross pecuniary gain or loss resulting

19    from the offense; and again, a mandatory special assessment of

20    $100.

21         Do you understand that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Do you understand that if convicted of the

24    third count, which is the first of the two firearm charges, you

25    could face, on that count alone, a maximum sentence of life

1    imprisonment; a mandatory minimum term of 25 years'

2    imprisonment, which must run consecutively to any other

3    sentence imposed upon you, including the sentences imposed for

4    other counts of this indictment; a maximum fine, again, at the

5    greatest of $250,000, or twice the gross pecuniary gain or loss

6    resulting from the offense -- and I neglected to say, as well,

7    a maximum term of supervised release of five years; and a

8    mandatory special assessment of $100.

9              Do you understand all of that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Do you understand that if you are

12   convicted of the fourth count, standing alone, that's the

13   second of the firearm charges against you, the one that

14   involves the killing of a person, that charge, standing alone,

15   would carry with it a maximum sentence of life imprisonment, a

16   mandatory minimum sentence of five years' imprisonment, which

17   must run consecutively to any other sentence imposed on you,

18   including the sentence for any other count of the indictment; a

19   maximum term of supervised release of five years; a fine in,

20   again, the greatest amount of $250,000 or twice the gross

21   pecuniary gain or loss resulting from the offense; and again a

22   mandatory special assessment of $100.

23             Do you understand all of that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you understand that if convicted of all

1    of these counts, the total maximum sentence of incarceration

2    that you could face would be life imprisonment, with a

3    mandatory minimum term of imprisonment of 30 years, which must

4    be imposed to run consecutively to any other sentence,

5    including any other sentence imposed on this same indictment?

6            Do you understand that?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Do you also understand that, if convicted

9    of these crimes, the Court may order you to pay restitution to

10   any victims of the crimes?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Do you also understand that if you are

13   convicted, you could be required to forfeit all property, real

14   and personal, that constitutes or derives from proceeds

15   traceable to your crimes?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Do you also understand that if, as part of

18   your sentence, you are placed on a term of supervised release,

19   and you then violate any condition of that release, your

20   supervised release may be revoked and you may face an

21   additional term of imprisonment?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Do you understand that if that should

24   happen, you may not get credit for time served on supervised

25   release?  In other words, the Court could require you to serve

in prison all or part of the term of supervised release that's

authorized by law for these offenses, without giving you credit

for time you may have already serve on supervised release.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that you have a right to

plead not guilty to these charges, and the right to a speedy

and public trial, and a jury trial, if you wish?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if you previously

entered a plea of not guilty to these charges, no one is

requiring you to change your plea and to proceed on a guilty

plea?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if you were to go

to trial, the burden would be on the government to prove your

guilt by competent evidence beyond a reasonable doubt?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if you were going

to go to trial, you would be presumed to be innocent unless and

until the government did prove your guilt beyond a reasonable

doubt?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand if you were to go to

trial by jury, a jury composed of 12 people selected from this

district would have to agree unanimously that you are guilty?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that at a trial you

3    would be entitled to be represented by an attorney at all

4    stages, and if you could not afford to hire one, an attorney

5    would be provided to you free of charge?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you understand that your right to be

8    represented by counsel and, if necessary, to have the

9    court-appoint counsel for you, applies not only to trial, but

10   also to every other stage of the proceedings against you?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that at a trial you

13   would be entitled, through your attorney, to cross-examine any

14   witnesses called by the government to testify against you?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that at a trial, you

17   would be entitled to testify and to present evidence on your

18   own behalf?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Do you understand that this means that you

21   would have the right to call witnesses to testify on your

22   behalf?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you also understand that you would be

25   entitled to have the Court issue subpoenas to compel witnesses

1   to appear to testify at trial?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Do you understand at a trial you would not

4   be required to incriminate yourself; that is, you would not be

5   required to testify against yourself?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Do you understand that this means that at

8   a trial you would have the right to testify if you wanted to do

9   so, but no one could force you to testify if you did not want

10  to do so; furthermore, no inference or suggestion of guilt

11  could be drawn if you chose not to testify at trial?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you understand that if you go forward

14  with your guilty plea, you will be giving up all the types of

15  protections I've just described, including your very right to a

16  trial, and the only remaining step would be the imposition of

17  sentence by the district judge in this case, who is Judge

18  McMahon?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Do you understand that if any of the

21  answers that you give me today prove to be untruthful, you

22  could face a separate prosecution for perjury or for making a

23  false statement to the Court?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  You told me earlier that you were not a

1    United States citizen; is that correct?  You're a citizen of

2    Trinidad and Tobago?

3             THE DEFENDANT:  That is correct.

4             THE COURT:  Do you understand that pleading guilty

5    could subject you to deportation?

6             THE DEFENDANT:  Yes, your Honor.

7             THE COURT:  Do you understand that in the

8    circumstances of your case, deportation may be mandatory?

9             THE DEFENDANT:  Yes, your Honor.

10            THE COURT:  You also understand that as a result of

11   your plea and the conviction that may flow from that, that you

12   may not only be removed from the United States, but you may be

13   denied readmission to the United States in the future and also

14   denied citizenship?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  In light of everything I have now told

17   you, do you still wish to plead guilty?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Do you understand that the decision as to

20   the appropriate sentence in your case will be entirely up to

21   Judge McMahon?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  Do you understand that Judge McMahon will

24   have discretion in determining your sentence, and her

25   discretion will be limited only by what the law requires for

1    these particularly charged offenses?

2                THE DEFENDANT:  Yes, your Honor.

3                THE COURT:  Do you understand that with respect to

4    your sentence, the Court will have the authority to impose an

5    order of restitution, as I mentioned, and the obligation to

6    impose a special assessment?

7                THE DEFENDANT:  Yes, your Honor.

8                THE COURT:  Do you understand that in determining your

9    sentence, the Court will also have the obligation to calculate

10   the sentencing guidelines and to consider them, even though it

11   will not be required to sentence you within the guidelines

12   range?

13               THE DEFENDANT:  Yes.

14               THE COURT:  Have you and your attorney had a chance to

15   talk about how the guidelines may be calculated in your case?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Do you understand that the Court will not

18   be able to determine the guidelines for your case until a

19   presentence report has been completed, and both you and the

20   government have had the chance to challenge the facts that are

21   reported to the probation officer?

22               THE DEFENDANT:  Yes, your Honor.

23               THE COURT:  Do you understand that even after the

24   guidelines calculation has been made for a case, the sentencing

25   judge will have the authority to impose a sentence that is

1    either less severe or more severe than the sentence recommended

2    by the guidelines, as long as it's within the statutory maximum

3    for the charged crimes?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  Do you understand that in addition to

6    considering the sentencing guidelines, the Court will also have

7    to consider possible departures from the guidelines, and also a

8    number of different factors on deciding on the appropriate

9    sentence to impose in your case?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Have you and counsel had the chance to

12   talk about the various factors listed in the relevant provision

13   of law, that's Title 18 of United States Code, Section 3553(a),

14   and about how those different factors may apply to you in your

15   particular case?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Do you need a moment to confer?

18           THE DEFENDANT:  No.

19           THE COURT:  Do you understand that those factors

20   include, but are not limited to, the actual conduct in which

21   you engaged, the victim of the offense, the role you played in

22   the offense, whether or not you have accepted responsibility

23   for your acts, whether you have any criminal history, and

24   whether you have engaged in any obstruction of justice?

25           THE DEFENDANT:  Yes, your Honor.

 1            THE COURT:  Do you understand that even if you end up

 2   shocked and disappointed by your sentence, you will still be

 3   bound by your guilty plea?

 4            THE DEFENDANT:  Yes, your Honor.

 5            THE COURT:  Do you understand that under some

 6   circumstances, you or the government may have the right to

 7   appeal the sentence that is imposed?

 8            THE DEFENDANT:  Yes, your Honor.

 9            THE COURT:  Do you understand that there is no parole

10   in the federal system, and that if you are sentenced to prison,

11   you will not be released on parole?

12            THE DEFENDANT:  Yes, your Honor.

13            THE COURT:  Understanding everything I've just told

14   you, do you still wish to plead guilty?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  I should clarify, with respect to my

17   question about your appeal right, if there's no plea agreement

18   here with an appeal waiver, I shouldn't qualify it by saying

19   "under some circumstances."  You understand you would have the

20   right to appeal from your sentence?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  I have a copy of a letter from the

23   government dated February 14, 2018, to your counsel.

24            Have you seen this letter from the government?

25            THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  Do you understand that the government's

2   letter is not a plea agreement?

3    THE DEFENDANT:  Yes.

4    THE COURT:  Do you understand that the purpose of the

5   government's letter is to set forth for you its current

6   position as to how it believes the guidelines would be

7   calculated in your case, the sentencing guidelines?

8    THE DEFENDANT:  Yes, your Honor.

9    THE COURT:  Do you understand that based on

10   information currently known to the government, it is its

11   position that, based on the calculations set out in its letter,

12   the sentencing guidelines range on Counts One, Two, and Four of

13   the indictment would be 360 months to life imprisonment; that

14   Count Three requires a mandatory minimum of 300 months'

15   imprisonment to be imposed independently of the sentence on all

16   other counts; and therefore, the guidelines range on Counts One

17   through Four is 360 months to life imprisonment, with a

18   mandatory minimum of 360 months imprisonment.

19    Do you understand that?

20    THE DEFENDANT:  Yes, your Honor.

21    THE COURT:  Off the record for a second.

22    (Off-the-record discussion)

23    THE COURT:  Let's go back on the record.

24    When we were off the record, I inquired of the

25   government regarding its guidelines calculation in its Pimentel

1    letter, in light of the fact that both Counts Three and Four

2    include a mandatory minimum term of imprisonment that would

3    have to run consecutively to any other sentence.  What's stated

4    in the Pimentel letter in terms of a mandatory consecutive

5    sentence was only with respect to Count Three.  So I just

6    wanted some clarification on that.

7         MR. SCOTTEN:  Specifically, with respect to the

8    guidelines range, the guidelines work differently for Count

9    Three, which is 924(c), discharge of a firearm, and Count Four,

10   which is 924(j), essentially murder using a firearm in a crime

11   of violence.

12        For 924(j), the guidelines are the murder guidelines,

13   and so the defendant's guidelines on that are 360 months to

14   life.  The 924(j) count by itself only has a five-year

15   mandatory minimum in it, so that is subsumed within the 360

16   months to life; that is, essentially the sentence he gets for

17   the 924(j) under the guidelines would be 360 months to life.

18        924(c) works differently.  It's a separate guidelines

19   provision.  Under that provision, you take the mandatory

20   minimum for the 924(c) and you add it to all of the other

21   guidelines calculations.

22        In this case, because the 924(c) is successor to the

23   (j), the mandatory minimum just for the (c) is 300 months.  So

24   you add that to the guidelines for all the other counts, which

25   is why you get 360, plus 300 months.  There's no requirement

1    for the (j) if you add that five years on top, because it's

2    already included as guidelines.  So it doesn't add even higher

3    guidelines as a result of the (j).

4            Does that parse it out?

5            THE COURT:  I appreciate that.

6            MR. SCOTTEN:  Thank you, your Honor.

7            THE COURT:  Let me go back to what I was saying

8    before, Mr. Collymore, and I'm assuming you've been listening

9    to what the government said as well.

10           Do you understand it is the government's current

11   position that if the guidelines were applied in your case, you

12   could expect the range of a prison term to be from 660 months

13   to life imprisonment, with a mandatory minimum of 360 months?

14           Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Do you also understand that it is the

17   government's current position that, under the guidelines, if it

18   were applied, the range for a fine in your case would be

19   anywhere from $50,000 to $500,000?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Do you understand that nothing in the

22   government's letter can bind Judge McMahon with respect to a

23   guidelines calculation, and that she will do her own guidelines

24   calculation, which may be different from the ones stated in the

25   government's letter?

1          THE DEFENDANT:  Excuse me.  Say that again.

2          THE COURT:  Do you understand that this is the

3    government's position; it's not necessarily the Court's

4    position?  Judge McMahon, prior to her sentencing, will do her

5    own guidelines calculation, which may be the same as what the

6    government has set forth, but it may be different.

7          Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you understand that nothing in the

10   government's letter can, in any way, bind the Court with

11   respect to the sentence that it imposes?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Do you understand that the calculation

14   contained in the government's letter is based on information

15   currently known to the government; and that nothing in its

16   letter will limit the right of the government to change its

17   position at any time as to the appropriate guidelines

18   calculation in your case to present to the Court or the

19   probation office, and all facts relevant to your sentencing or

20   to seek a departure or variance from the guidelines, or to take

21   a position with respect to any departure or guidelines that may

22   be suggested by the Court, by the probation office, or by you?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you understand the government is not

25   making you any promise as to the sentence that you will

1    receive?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Has anyone made any promises of any kind

4    to you to influence you to plead guilty?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Have any promises been made to you

7    regarding the sentence that you will receive?

8              THE DEFENDANT:  No, your Honor.

9              THE COURT:  Do you understand that no one, including

10   your attorney or the government or this Court, can give you any

11   assurance as to what your sentence will be, as your sentence

12   will be determined solely by the sentencing judge after that

13   judge has ruled on any challenges to the presentence report,

14   has calculated the sentencing guidelines, and has determined

15   whether there are grounds to adjust the guidelines range or to

16   sentence you outside of that range?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  I just note that there seems to be a

19   paragraph in the Pimentel letter as to something that defendant

20   is recognizing with respect to immigration consequences at the

21   bottom of page 4.  This is solely the government's letter.  I'm

22   not sure why that's there.

23             MR. SCOTTEN:  I think that's fair, your Honor.  It's

24   stock language.  It would be more accurately phrased as a

25   warning to the defendant, but the defendant does not have to

1    recognize anything.  Of course if the defendant doesn't agree

2    to the Pimentel, it doesn't really matter that it says that,

3    because, as you point out, the defendant hasn't agreed to it.

4            THE COURT:  I have already sought to make sure that

5    Mr. Collymore understands what the potential immigration

6    consequences are of his plea, and I don't believe I need to do

7    more on that.

8            Does the government agree?

9            MR. SCOTTEN:  Yes, your Honor.

10           THE COURT:  Have any threats been made against you,

11   Mr. Collymore, either direct or indirect, to influence how you

12   plead today?

13           THE DEFENDANT:  No, your Honor.

14           THE COURT:  Is your plea voluntary and made of your

15   own free will?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Before I ask you to explain what you did,

18   let me ask the government please to summarize the elements it

19   would need to establish at trial to sustain each of the four

20   charges.

21           MR. LENOW:  Your Honor, on Count One, first, the

22   government would have to prove that two or more individuals

23   agreed to take personal property from the premise of another;

24   second, that this was done by force or threat of force; and

25   third, that this had an effect or would have an effect on

1    interstate commerce had the agreement come to fruition.

2            Count Two.  The elements are that an individual took a

3    substantial step towards completing a robbery, that is, the

4    taking of permanent property from the premise of another.  This

5    was done by force or threat of force or would have involved

6    those had the attempt come to -- I'm sorry, and do involve

7    those.

8            THE COURT:  I'm assuming that defendant took the

9    substantial step.

10           MR. LENOW:  Yes, the defendant took that substantial

11   step to take personal property from the premise of another by

12   force or threat of a force, and that this would have had an

13   effect on interstate commerce or did have an effect on

14   interstate commerce if the robbery had come to fruition.

15           The third count would be the firearm count.  It

16   involves four elements.

17           The first is that during and in relation to the

18   commission of a crime of violence prosecutable in federal

19   court, here, that's the attempt to commit robbery charged in

20   Count Two, the defendant knowingly used, possessed, or carried

21   a firearm.  This use, possession, or carrying of a firearm was

22   in furtherance of a crime of violence, that's the predicate

23   offense.  Fourth, the firearm was discharged and, here,

24   specifically alleged that that discharge was on an occasion

25   other than the death of Carlos Vargas.

1            The fourth count here is the firearm count involving

2     the death of Carlos Vargas.  The elements there are, first,

3     during and in relation to the commission of a crime of violence

4     prosecutable in federal court, the attempt to commit robbery

5     charged in Count Two, the defendant knowingly used, possessed,

6     or carried a firearm.  That use, possession, or carrying of a

7     firearm was in furtherance of the crime of violence charged;

8     that this caused the death of another person through the use of

9     a firearm, here Carlos Vargas.  Finally, that the killing would

10    be defined as murder under federal law.

11            With respect to each of these counts, the government

12    would have to prove by a preponderance of evidence that some

13    act, either the conspiracy or the agreement, was formed in or

14    was carried out in the Southern District of New York and, with

15    the other counts, that some act in furtherance of the crime

16    occurred in the Southern District of New York as well.

17            I would also note, while I have the chance to address

18    the Court, that we also want to note that consular notification

19    in this case was made back when the defendant was arrested back

20    in August of 2016.

21            THE COURT:  Thank you for following up on that.

22            Can I just quickly ask for clarification on the one

23    date, April 28, 2016, the use or carrying of a firearm for some

24    purpose other than the alleged murder, on occasions other than

25    that murder and then for that.  Can I just get a quick

1   understanding from the government as to what facts you'd be

2   looking for that would satisfy both of those things?

3           MR. LENOW:  Of course, your Honor.

4           With respect to Count Four, which is the death count,

5   that offense is specifically defined by another person dying by

6   virtue of the use of a firearm.  So in this case the evidence

7   would show that the defendant at a point in time pointed a gun

8   at someone and discharged it and that bullet caused the person

9   to die.

10          There was, however, another shooting that occurred in

11  that apartment that was not the murder.  Another victim of the

12  robbery was fired at.  The bullet fortunately missed that

13  person, so that is the separate conduct.  Essentially the

14  attempted murder is the conduct that underlies Count Three.

15  The murder, the firing of a firearm that actually killed an

16  individual, just a separate shooting, is the conduct that

17  underlies Count Four.

18          THE COURT:  I see.

19          Mr. Collymore, did you hear counsel for the government

20  summarize the elements that it would need to prove as to each

21  of the charges in order to obtain a conviction against you on

22  each of those separate charges?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you understand that in order to obtain

25  a conviction against you on any particular charge, the

1    government would have to prove each of the elements of that

2    offense beyond a reasonable doubt?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Do you still wish to proceed with your

5    plea?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Did you, in fact, commit the four offenses

8    that are charged in the third superseding indictment?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Would you tell us in your own words what

11   you did that makes you guilty of these crimes?

12             MR. STERN:  Judge, with your permission, these are his

13   words that he intends to use, but he's going to have trouble

14   reading them, so I'm going to read them and he's going to

15   repeat it, but they are, in fact, his words.

16             THE COURT:  Mr. Collymore, I'm going to ask you to

17   confirm to me, after you give me this information, that these

18   are, in fact, your own words and not the words of counsel.  All

19   right?  Go ahead.  You may proceed in this way.

20             THE DEFENDANT:  On April 28, 2016 --

21             THE COURT:  I'm sorry.  April 28; is that right?

22             MR. STERN:  28.

23             THE DEFENDANT:  In the Southern District of New York,

24   I agreed with others to commit robbery.  We agreed to rob

25   people engaged in the sale of marijuana at 22466 Marion

Avenue –– 2466 Marion Avenue.

THE COURT:  2466 Marion Avenue.  That's in the Bronx; is that right?

THE DEFENDANT:  Yes.

On that same day, I, along with others, tried to rob the spot at 2466 Marion Avenue.

During the robbery, I possessed, brandished, and discharged ––

THE COURT:  Possessed, brandished, and discharged; is that right?

THE DEFENDANT:  Correct.

A gun, which I fired at someone other than Carlos Vargas.

THE COURT:  Let me make sure I have the name properly.

MR. STERN:  Carlos Vargas.

THE COURT:  Carlos Vargas.

THE DEFENDANT:  That same day I used a weapon, a firearm, and killed Carlos Vargas.

THE COURT:  Let me make sure that I'm following everything.

You agreed with other people that you would either rob or certainly try to rob people engaged in the sale of marijuana.  I got that much correct, right?

THE DEFENDANT:  Correct.

THE COURT:  Then you went ahead in accordance with

1    that agreement to try to commit that robbery, right?

2              THE DEFENDANT:  That's correct.

3              THE COURT:  In the Bronx.

4              In connection with that robbery, am I right in

5    understanding that you possessed a firearm, and that you took

6    out that firearm and, in fact, shot it at two people?

7              THE DEFENDANT:  That's correct.

8              THE COURT:  One of the people was Carlos Vargas, and

9    he died from that shooting; is that right?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  You also shot at someone else who was not

12   hit by a bullet; is that right?

13             THE DEFENDANT:  That's correct.

14             THE COURT:  Did you understand what it was you were

15   doing when you agreed to try to commit this robbery?  Did you

16   understand that's what you were agreeing to do?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  All of this use of a gun, am I right in

19   understanding that was all in furtherance of trying to rob

20   these drug dealers; is that correct?

21             THE DEFENDANT:  That's correct.

22             THE COURT:  The words that you spoke to me, with the

23   assistance of your counsel, were those your own words?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do either counsel believe that any

1  additional facts need to be elicited for a satisfactory

2  allocution to any of the counts?

3           MR. LENOW:  No, your Honor.

4           THE COURT:  Counsel?

5           MR. STERN:  No.

6           THE COURT:  Do either counsel believe there are any

7  additional questions of any kind that should be asked of

8  Mr. Collymore?

9           MR. LENOW:  No, your Honor.

10          MR. STERN:  No.

11          THE COURT:  Do either counsel know of any reason I

12 should not recommend that Judge McMahon accept this plea?

13          MR. LENOW:  No, your Honor.

14          MR. STERN:  I do not.

15          THE COURT:  Then based on my colloquy with

16 Mr. Collymore, I conclude that he understands the nature of the

17 four charges in the third superseding indictment, and the

18 consequences of his plea to those charges.  I am also satisfied

19 that his plea is voluntary and there is a factual basis for the

20 plea.

21          I'll also note for the record that I see no issue with

22 respect to Mr. Collymore's competence to enter a plea.  He

23 seemed fully able to participate in these proceedings today.

24          As has already been noted on the record earlier, when

25 he expressed hesitation previously about proceeding, we did

1    take a fairly substantial break and retained another attorney

2    to consult with him.  I'm satisfied with his response that he

3    was then comfortable with going forward.

4         Accordingly, for all these reasons, I recommend that

5    Judge McMahon accept the proffered plea to the four counts of

6    the indictment in 16 Cr. 521.

7         Has Judge McMahon set a sentencing date?

8         MR. LENOW:  No, your Honor.

9         THE COURT:  Let's have a control date 90 days out.

10        May 16.  Please be in touch with Judge McMahon's

11   chambers about that.

12        Is there any issue here as to bail?

13        MR. STERN:  No.

14        THE COURT:  I'm going to ask the government to prepare

15   the prosecution case summary for the purposes of the

16   presentence report, and to deliver that to the probation

17   department no later than two weeks from today.

18        I'm also going to ask defense counsel to contact the

19   probation department to schedule a presentence interview of

20   your client, also to be held within two weeks.  Please make

21   yourself available for that interview so that the matter can be

22   moved along.

23        Counsel, I assume the government will order a copy of

24   the transcript of this allocution?

25        MR. LENOW:  Yes, your Honor.

1    THE COURT:  Please submit that, together with any

2    necessary additional paperwork, to Judge McMahon so that she

3    may act on my recommendation.

4         Is there anything else?

5         MR. LENOW:  No, your Honor.

6         Thank you for your time.

7         MR. STERN:  Not from us.  Thank you.

8         THE COURT:  Best of luck to you, Mr. Collymore.

9         (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25